## Revolving Credit Plans

ANNE X. ALPERN, Attorney General and FREDERIC G. ANTON, Deputy Attorney General, December 6, 1960.—You request our opinion as to the legality of the revolving credit plan of retail merchandising in use by various retail sellers of merchandise in Pennsylvania. Specifically, you ask the following three questions:

1. Does the revolving credit plan of operation conducted by retail stores, in which the buyer is required to pay a monthly charge computed on the unpaid balance of his account at a rate in excess of six percent per year simple interest, constitute a loan in the nature of a forbearance of debt on which charges exceed the maximum rate of six percent per year, established by the General Usury Statute of Pennsylvania?

2. Does the revolving credit plan of operation conducted by retail stores, in which the buyer is required to pay a monthly charge computed on the unpaid balance of his account at a rate in excess of six percent per year simple interest, constitute a "loan, use or forbearance of money, goods, or things in action," or a "loan, use or sale of credit" falling within the purview of section 6, subsection B of the Small Loans Act approved June 17, 1915, as amended?

3. Does the revolving credit plan of operation in which a banking institution participates in the financing of the sale of goods as described herein constitute a violation by the bank of the General Usury Statute or the Banking Code, section 1001, subsec. 3, subdiv. 4?

Because each question involves different statutes and different plans of operation, each will be discussed separately.

The statute involved in the first question, the Act of May 28, 1858, P. L. 622, sec. 1, as amended, 41 PS §3, reads as follows:

"The lawful rate of interest for the loan or use of money, in all cases where no express contract shall

have been made for a less rate, shall be six per cent, per annum: Provided, however, That any loan insured by the Federal Housing Administration, pursuant to the provisions of the National Housing Act, approved the twenty-seventh day of June, one thousand nine hundred thirty-four, its amendments and supplements, may bear such rate of interest or be discounted at such rate as is permitted under the National Housing Act and the regulations promulgated from time to time by the Federal Housing Administration. The first and second sections of the act passed second March, one thousand seven hundred and twenty-three, entitled 'An Act to reduce the interest of money from eight to six per cent, per annum,' be and the same is hereby repealed."

This statute refers strictly to the loan or use of money. Pennsylvania courts have consistently held that the carrying charge or interest charge on the sale of merchandise is not a charge for the loan or use of money. The Supreme Court in the case of Equitable Credit and Discount Company v. Geier, 342 Pa. 445, 455, (1941), held:

". . . Of course, all sale or lease contracts which extend credit are, to a certain extent, akin to the making of loans, but where a greater charge is exacted in the case of a sale on credit than in a cash sale it is included in the selling price of the article. It being uniformly held that sellers are free to contract with buyers as to the terms and conditions of sales, the financing of sales of merchandise by the extension of credit has never been considered subject to the prohibition of usury or to regulations applicable to banking and loan transactions."

You are, therefore, advised that the revolving credit plan of operation does not come within the purview of section 1 of the 1858 Act, as amended, supra.

The second question is directed to whether or not the

revolving credit system as used by individual retail merchants or department stores violates subsection B of section 6 of the Small Loans Act of June 17, 1915, P. L. 1012, as amended, 7 PS §751, et seq. The title of this act, as originally enacted, specifically set forth:

"Regulating the business of loaning money in sums of three hundred ($300) dollars or less, either with or without security, to individuals pressed by lack of funds to meet immediate necessities; fixing the rates of interest and charges therefor; requiring the licensing of lenders; and prescribing penalties for the violation of this act."

The title of the act as amended by the Act of June 2, 1953, P. L. 262, reads:

"Regulating the business of loaning money in sums of six hundred ($600) dollars or less, either with or without security, to individuals pressed by lack of funds to meet immediate necessities; fixing the rates of interest and charges therefor; requiring the licensing of lenders; and prescribing penalties for the violation of this act."

Specifically, you refer to subsection B of section 6 of the 1915 Act, supra, as amended, 7 PS §759, which reads as follows:

"B. Every person, persons, copartnership, association, or corporation, or any partner, director, officer, agent, or member thereof, who shall, directly or indirectly, as principal, agent, or broker, by any device, subterfuge or pretense whatsoever, charge, contract for, or receive any interest, discount, fees, fines, charges or consideration greater than six per centum (6%) per annum upon the loan, use or forbearance of money, goods, or things in action, or upon the loan, use or sale of credit, of the amount or value of six hundred ($600) dollars or less, without having obtained a license under this act, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be

sentenced to pay a fine of not less than five hundred ($500) dollars or more than five thousand ($5,000) dollars, or to suffer imprisonment of not less than six (6) months or more than three (3) years, or both, at the discretion of the court."

The revolving credit plan as described is engaged in by individual merchants and department stores at the retail level and involves the sale of merchandise and not the business of lending money. While subsection B, above quoted, supra, uses broad terms and refers to the forbearance of debt or the sale of credit, it must be remembered that this is a penal statute and must be strictly construed. In our opinion, a construction of the statute which would extend its application to transactions which do not include the lending of money, as restricted by the title, would not be upheld by the courts.[1]

You are, therefore, advised that the revolving credit plan of operation, as used by retail merchants, does not fall within the purview of subsection B of section 6 of the Small Loans Act of June 17, 1915, P. L. 1012, as amended.

The third question is whether or not a banking institution which participates in the financing of the sale of goods on a revolving credit plan violates the General Usury Statute or the Banking Code, the Act of May 15, 1933, P. L. 624, subdiv. (4) of subsection A of section 1001, as amended, 7 PS §§819-1001.

The revolving credit plan by which a bank participates as outlined by the Department of Banking is as follows:

"The bank sets up a revolving credit plan in a com-

---

[1] There is no question whatsoever that the legislature has the right to regulate charges made for credit on the sale of all consumer goods. Many States have done so. However, Pennsylvania has seen fit by specific statutory authority to regulate finance or credit charges on the sale of automobiles only.

munity, the buyer establishes credit at the bank for a maximum amount and an agreed monthly payment. The buyer is then at liberty to make purchases at any one or more of a number of participating stores."

The General Usury Statute has been quoted above. Subdivision (4) of subsection A of section 1001 of the Banking Code, supra, as amended, 7 PS §§819-1001, reads as follows:

"A. In addition to the general corporate powers granted by this act, and in addition to any powers specifically granted to a bank or a bank and trust company in this act, a bank or a bank and trust company shall have the following powers, subject to the limitations and restrictions imposed by this act: . . .

"(4) (a) To lend money either upon the security of real or personal property, or otherwise; to charge or to receive in advance interest therefor; to contract for a charge for a secured or unsecured installment loan, which in principal amount shall not exceed thirty-five hundred dollars, and which under its terms shall be repayable in substantially equal installments over a period not exceeding three years, which charge shall be at a rate not exceeding six dollars per one hundred dollars per annum upon the original face amount of the instrument or instruments evidencing the loan for the entire period of the loan, and which such charge may be collected in advance: . . ."

This plan differs from the plan discussed in questions 1 and 2 in that in this situation a prospective buyer actually arranges with a bank to pay money on his order to a merchant. The buyer, as far as the bank is concerned, is a borrower. The bank is not a retail merchant selling goods on credit.

You are, therefore, advised that a bank participating in a revolving credit plan, as described in question 2, cannot charge more than $6 per $100 per annum collected in advance on amounts up to $3,500 without

violating section 1001A(4) of the Banking Code, which is an exception to the General Usury Statute, and cannot charge in excess of six percent per annum simple interest on amounts in excess of $3,500 without violating the General Usury Statute. This applies to all situations where the consumer deals with the bank and establishes credit at the bank regardless of the terms or conditions which appear on the sales slip or sale contract between buyer and seller. This is not to say that a bank cannot buy commercial paper from retail merchants at a price that will yield earnings or interest in excess of the above amounts; however, the purchase of commercial paper is a transaction between the bank and the merchant or financing company and not a transaction between the bank and a buyer or prospective buyer. In the revolving credit transaction the buyer makes arrangements with the bank, or arrangements are made for the buyer at the bank. The transaction is between buyer and bank, and this makes the buyer a borrower.

We are of the opinion, and you are, therefore, accordingly advised that:

1. A revolving credit plan of operation conducted by retail stores, in which the buyer is required to pay a monthly charge computed on the unpaid balance of his account at a rate in excess of six percent simple interest, violates neither the General Usury Statute nor the Small Loans Act.

2. A banking institution which furnishes a revolving credit plan of operation directly to a customer may charge $6 per $100 per annum, collectible in advance on the original face amount of the loan, on amounts up to $3,500, where the loan qualifies as an installment loan under section 1001A(4) of the Banking Code; on amounts over $3,500, the banking institution is bound by the General Usury Statute to charge six percent simple interest per annum.